**MURCHISON et al. v. BALLARD.**

No. 11374.

Court of Civil Appeals of Texas. San Antonio.

Feb. 2, 1944.

Boyle, Wheeler & Gresham, of San Antonio, for appellants.

W. L. Matthews and W. F. Nowlin, both of San Antonio, for appellee.

556

MURRAY, Justice.

This suit was instituted by A. L. Ballard against T. F. Murchison, E. M. Closuit, G. L. Rowsey, Hiram M. Reed and Rupert Cox, seeking to recover a broker's commission of 5% upon the sum of $506,035.06, the price paid by W. R. Davis, Inc., for all the capital stock of the Valley Pipe Line Company, a Texas corporation.

The trial was to a jury and upon their answers to the special issues submitted to them judgment was rendered in A. L. Ballard's favor in the sum of $25,301.75. From this judgment T. F. Murchison and the other defendants below (except Rupert Cox, against whom no recovery was had) have prosecuted this appeal.

Murchison admits, in effect, that the Valley Pipe Line Company was listed with Ballard for sale to W. R. Davis, and that he agreed, or at least expected, to pay a commission to Ballard if the sale was made, but contends that along with this listing the Coastal Refineries, Inc., was listed and that only a sale of both properties as a unit was contemplated at the time of making the listing with Ballard, in September, 1939. Murchison acted for the corporations with the authority of the other stockholders. Murchison did not testify upon the trial that he plainly told Ballard that the two corporations would have to be sold as a unit, but simply said that that was what was contemplated. He said that Ballard knew that the pipe line was used to supply crude oil at the refinery and that it would be suicidal to sell the pipe line without at the same time disposing of the refinery. On the other hand, Ballard's testimony is to the effect that while both corporations were listed with him and that while he was given to understand that the stockholders preferred to sell both corporations at the same time, they would sell the pipe line separately if they could get a price that would justify such a sale. On May 13, 1941, some twenty months after the property was listed with Ballard, all the stock of the Valley Pipe Line Company was sold to W. R. Davis, Inc. It is clear from the record that upon this sale Ballard was entitled to a commission, unless there was only a listing of the two properties for sale as a unit, and that such a listing would not entitle Ballard to a commission if only one of the properties were sold.

■ It will be borne in mind that this is not a suit by Ballard on the theory that he found a purchaser who was ready, able and willing to purchase one of the two properties, and therefore he should be permitted to collect a commission, but is a suit for a commission for the actual sale of the property to the very purchaser whom Ballard named to Murchison during their first transaction in September, 1939. Murchison had told Ballard in the very beginning that he would not deal with him unless he named, then and there, his prospective purchaser, whereupon Ballard named W. R. Davis and his several corporations. It is quite possible that if Ballard had only produced a purchaser for one of the properties that Murchison could have refused to sell only one of the properties separately, but when Murchison proceeded to sell one of the properties to the very purchaser produced by Ballard for a price satisfactory to him, he cannot escape, under the facts in this case, the payment of a commission by saying to Ballard, you should have at the same time produced a purchaser for the refinery.

■ According to the testimony of Ballard, and, the jury having found in Ballard's favor, we must take his testimony as true, he and Murchison had many talks during the pendency of this deal, and on several occasions Murchison assured Ballard that if the pipe line alone was sold to Davis that he, Ballard, would get his commission. This testimony shows the construction which the parties themselves placed upon the contract before any controversy arose, and it being a reasonable construction should be carried out by the courts. In Berry & Co. v. Langbehn, 113 Tex. 72, 252 S.W. 472, 475, it is stated: "It is familiar law that where a contract is ambiguous in its terms, a construction given it by the parties thereto and by their actions thereunder, before any controversy has arisen as to its meaning, with knowledge of its terms, will, when reasonable, be adopted and enforced by the courts."

■■ Murchison further contends that only by reason of the fact that oil had been discovered in the Rincon Oil Field between the first listing of the properties, in 1939, and the final sale of the pipe line, in 1941, could he and his associates have consented to a sale of the pipe line alone. It occurs to us that it makes no difference why the stockholders finally consented to sell the pipe line without also selling the refinery at the same time, the fact remains that they did do so, and to the very purchaser

originally named by Ballard as a prospect. There is no evidence that there was a definite agreement that Ballard was not to receive a commission in the event there was a separate sale, and, under all the facts in the record, a fair interpretation of the agreement entered into between Murchison and Ballard would be that Ballard should receive a commission if he sold either property for a price satisfactory to Murchison and the other stockholders of the two corporations. The jury in effect so found and we sustain that finding. We are cited by appellants to the case of Kirby Lumber Co. v. West, Tex.Com.App., 236 S.W. 449. The facts in that case are so different from the facts in this case as to render it not in point here.

■■ Appellants next contend that the evidence is insufficient to support the jury finding that Ballard, within a reasonable time, placed the defendant Murchison in contact with W. R. Davis, in accordance with the offer of Murchison to sell the properties. We overrule this contention. The record shows that at their first meeting Ballard told Murchison that he did not personally know W. R. Davis, but that he expected to deal through a firm known as Rowan and Hope. Ballard did submit the proposition to W. R. Davis through Alvin C. Hope of that firm, and after a long course of dealing the sale was finally brought about. It is true that before the sale was closed Murchison notified Ballard that he was then in touch with Davis and his companions, and that Ballard should desist from further negotiations, but the fact that Murchison closed the deal without any further assistance from Ballard, as he preferred to do, could not deprive Ballard of his commission when he had been the means of bringing the seller and the buyer together. Murchison denied telling Ballard to desist, but Ballard so testified and the jury found in Ballard's favor.

■ Appellants next contend that the court erred in admitting in evidence a letter from Alvin C. Hope to W. R. Davis, dated September 13, 1939, submitting to him the matter of purchasing the properties owned by Murchison and his associates. It was necessary for Ballard to show that he had been instrumental in interesting Davis in the purchase of these properties and this letter was admissible for that purpose. Luhn v. Fordtran, 115 S.W. 667

(writ refused); Roman v. Goldberg, Tex. Civ.App., 3 S.W.2d 482; Stolaroff v. Campbell, Tex.Civ.App., 18 S.W.2d 838; 8 American Jurisprudence, 1118.

■ Appellants particularly objected to that part of the letter which reads as follows: "He (referring to Mr. Murchison) has not as yet given me a definite price, but indicated that he wishes to sell both the pipe line and refinery together, but would sell the pipe line separately."

The court in admitting the letter instructed the jury that it should not consider the sentence in the letter objected to as evidence of the truth of the statements made. In view of this instruction, we are of the opinion that the entire letter was properly admitted.

Appellants' next point presents alleged improper argument of appellee's counsel. The record shows that while W. L. Matthews, attorney for Ballard, was addressing the jury the following occurred:

Matthews was making the following argument: "Now, Ballard, had no reason in the world to mislead anyone in the month of September, 1939, about what Murchison had said to him. He had nothing to gain, but had everything to win by doing what Murchison wanted and getting a purchaser. The evidence is absolutely undisputed that in the first week in September, or along about that time, they had this initial conversation, and that Murchison gave him that information so Hope could transmit it to W. R. Davis and put W. R. Davis in contact with Murchison. Now, there is no doubt about that; that is admitted by everybody. Now, then, on September 13th, Hope, who is vouched for as an honest conscientious man, and whose testimony is not attacked here by anybody, writes this letter to Davis, on information given to him by Ballard * * *."

At that point counsel for defendants objected as follows: "What he is reading to the jury is purely hearsay and cannot be considered by them for any purpose. Mr. Hope admitted that he had no conversation with Mr. Murchison, and the letter was introduced with the understanding that it could not be considered by the jury as proof of the statements, but merely that Mr. Hope had communicated with Mr. Davis; and I ask that the jury be now instructed as they were instructed then, that they cannot consider the statements

558

on the issues of the truth of the statements therein contained."

The Court said: "I have already instructed the jury once on that matter and I don't see any necessity of instructing them again."

Mr. Matthews then said: "I am not trying to vary the court's instructions. It is admitted in evidence and I have read it and I am going to read it again. (Counsel then read the letter) Now, I don't claim that is evidence of those facts. I claim it is a very important circumstance bearing on the facts; that that is the way he got it and that is the way it went out. And nobody ever repudiated it, apparently, until after this suit was filed."

The last argument above set out is the claimed improper argument. This argument was not objected to. The objection made was to Matthews reading the letter. Inasmuch as the letter was admitted in evidence, counsel had a right to read it to the jury. The statement by the court that there was no necessity for him to again instruct the jury as he had previously done was entirely proper. The argument thereafter made by Matthews is somewhat confused and it is difficult to determine exactly what he intended by such remarks. This argument was not objected to nor was the court requested to instruct the jury to disregard the same. Under such circumstances no reversible error is shown.

Appellants next complain because judgment was rendered against them jointly and severally for the full amount of the commission recovered, rather than the proportionate amount each would be liable for in proportion to the amount of stock he held in the Valley Pipe Line Company, as was prayed for by appellee in the final prayer of his petition. The allegations of the body of the petition were to the effect that all of appellants authorized Murchison to contract with Ballard and make the agreement which he did make with Ballard. There was a prayer for special relief, but there was also a prayer for general relief. The judgment entered is not inconsistent with the special prayer for relief, but simply goes further and gives full and complete relief based upon allegations in the petition. The joint and several judgment was proper. Danciger v. Smith, Tex.Civ.App., 286 S.W. 633.

The judgment is affirmed.