**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Irma Z. RODRIGUEZ, Appellee.**

**No. 15511.**

Court of Civil Appeals of Texas, San Antonio.

May 26, 1976.

Loyd E. Bingham, Jr., House, Mercer, House, Brock & Wilson, San Antonio, for appellant.

Jerald L. Abrams, Knickerbocker, Abrams & Acklen, Eagle Pass, for appellee.

BARROW, Chief Justice.

Appellant has perfected its appeal from a judgment on a jury verdict that appellee was totally and permanently incapacitated under the Texas Workmen's Compensation Act as the result of an injury sustained in the course of her employment.

Appellant urges by eight points of error that the evidence is legally or factually insufficient to support the jury findings that the injury was a producing cause of total incapacity; such incapacity was permanent; or that such incapacity was not solely caused by a female condition wholly independent of such injury. Appellant's ninth point complains of the actions of appellee's attorneys in reading from the oral depositions with prejudicial voice inflections. The parties will be hereinafter referred to as plaintiff and defendant.

■ It is fundamental that in considering the "no evidence" points we must consider only the evidence and inferences favorable to the jury findings and disregard all evidence and inferences to the contrary, but all evidence is considered in passing upon the "factually insufficient" points. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

It is uncontradicted that plaintiff sustained an injury on February 26, 1974, while lifting a bundle of hangers in the course of her employment as a pants presser for Williamson-Dickie Manufacturing Co. in Eagle Pass. She continued on the job, although suffering pain, and did not consult a doctor until about March 13, 1974. She went to Dr. DeHoyos after the pain in her back became unbearable. He advised her to wear a support, which she is still wearing, and to take pain pills. She returned to work after about a week, but was unable to continue on the job. She was then sent by her foreman to Dr. Gonzalez Rios, an orthopedic specialist in Piedras Negras, Mexico. Dr. Rios gave her heat treatments and performed manipulation under anesthetic. Dr. Rios believed her condition to be caused by female problems and sent her to Dr. Rodolfo Cruz, a doctor specializing in problems of the female reproductive organs. Dr. Cruz performed a dilation and currettage on April 4, 1974. She continued to complain of back pain, and on May 14, 1974, Dr. Rios performed a myelogram on her back. This test showed no abnormal findings and he urged her to return to work. She returned to work in July, but had to quit again in August and was off work until November 9, 1974. She returned to her job at that time and continuously performed her regular duties until the trial on March 6, 1975.

■ It is settled law that the fact an employee continues to work after she is injured is not controlling on the question of total and permanent incapacity, but this is one fact to be considered by the trier of the facts along with other facts and circumstances introduced in evidence. *Texas Employers Insurance Association v. Thomas*, 517 S.W.2d 832 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.); *Home Insurance Company v. Smith*, 482 S.W.2d 395 (Tex. Civ.App.—Waco 1972, no writ). Numerous cases support this rule although it must be recognized that the evidence in most of these cases shows a change in duties or in the manner of performance of the employee's work because of the disability.

Here the plaintiff returned to her regular job of pressing pants and continued to perform, with no loss of time, all her work in a very efficient manner. The employees earn a higher hourly rate when they make an assigned quota and plaintiff consistently made her quota after she returned to work. She testified that it was necessary that she work to earn money in that her husband's salary was not adequate to discharge their numerous debts. She also testified, and was corroborated by members of her family and a co-worker, that she performed her work under stress of pain and paid the price by sharply reducing all her duties around the house and cutting out all social activities.

Three doctors testified by deposition at the trial. In addition to the treatment by Dr. Rios, Dr. DeHoyos, and Dr. Cruz, plaintiff was examined on June 21, 1974, by Dr. Gregorio Canales, an orthopedic specialist in San Antonio, and also by Dr. Coyle Williams. Dr. Canales testified that plaintiff was complaining of low back pain which radiated to her lower abdomen and thighs. He found no objective symptoms of a neuromuscular injury and recommended that she see a doctor specializing in female problems. He believed she was sincere in her complaints and recommended that she not return to work until "complete medical evidence rules out any serious abnormalities in her low abdomen, pelvis, [and] low back." She did have an area of tenderness in her back on palpation. Dr. Canales said that plaintiff had aggravated an osteo-arthritic condition which would disable her about six weeks.

Dr. Rios testified that he could find no objective findings to substantiate plaintiff's complaints of low back pain on either his examination of May 14, 1974, or his final examination on October 15, 1974. This conclusion was largely based on the negative results of his myelogram examination of her. Dr. Rios believed plaintiff was truthful in her complaints and he thought she was suffering from a gynecological disorder.

Dr. Cruz testified that her female trouble was the result of an incomplete abortion which was caused by the accidental injury. He performed the dilation and currettage on her on April 4th. He last saw her on April 5th, and at that time her prognosis was excellent insofar as the condition caused by her female trouble was concerned.

It has been determined that a jury verdict of total and permanent disability may be based solely on lay testimony, even where contradicted by expert medical witnesses, and a jury may infer total and permanent disability from circumstantial evidence. *Travelers Insurance Company v. Wade*, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1965, writ ref'd).

Here it is uncontradicted that plaintiff had no problems in her low back until she sustained the accidental injury in February 1974. All witnesses verify that she has continuously suffered since that time. The disagreement is over the cause of her difficulty. In our opinion, this disagreement is immaterial in view of the testimony of Dr. Cruz that the incomplete abortion was caused by the accidental injury. This testimony supports the jury finding that her disability is not solely caused by any pre-existing condition. Although she had worked continuously for about six months prior to the trial, there is evidence she did so under the stress of economic necessity. She performed her work with the aid of a back support and by use of pills to reduce the pain.

We conclude from an examination of the entire record before us that the evidence is factually sufficient to support the jury verdict. We therefore overrule defendant's first eight assignments of error.

Defendant's ninth point complains of the cumulative effect of the repeated actions of plaintiff's attorney in attempting to influence and prejudice the jury by the manner said attorney read from the oral depositions of the three doctors. The record reflects that on two occasions the defendant's attorney objected to the manner of reading of depositions. Both objec-

tions were promptly sustained by the trial court. No instruction to disregard was requested by defendant on either occasion, but it now argues that the error could not be cured by an instruction. We disagree.

 Although the record does not show any inflections or gestures, the two incidents where objections were made do not appear to have been of any consequence. Obviously, gestures and voice inflections have no place in the use of depositions, and should be prohibited by the trial judge. We suggest that the reading of depositions is more meaningful where one person reads the questions and another reads the answers. This also eliminates the need for voice inflections to distinguish the question from the answer. We conclude that reversible error is not shown by this point and it is overruled.

The judgment of the trial court is affirmed.