The STATE of Texas

v.

TEXAS PET FOODS, INC.

No. B–8449.

Supreme Court of Texas.

Nov. 14, 1979.

Rehearing Denied Jan. 30, 1980.

---

1. Reference is to Vernon's Texas Revised Civil Statutes Annotated.

Mark White, Atty. Gen., David J. Preister, Asst. Atty. Gen., Austin, for petitioner.

Dunnam, Dunnam & Dunnam, Vance Dunnam, Waco, for respondent.

SPEARS, Justice.

The primary question presented is the determination of the existence of a present or threatened violation of the Texas Clean Air Act, Texas Water Quality Act, or Texas Renderers' Licensing Act, that will support the issuance of a permanent injunction.[1] A second question is whether there is any evidence to support one of the violations of the Clean Air Act found by the jury—operating a cooker without a permit.

The State of Texas filed suit for civil penalties and injunctive relief against Texas Pet Foods, Inc. for violations of the above statutes. After trial to a jury, the trial court rendered judgment in favor of the State, assessing civil penalties for past violations and granting injunctive relief to prevent future violations. The court of civil appeals modified the judgment, vacating the injunction and reducing the civil penalties, and affirmed. 578 S.W.2d 814. We reverse that part of the judgment of the court of civil appeals that set aside the injunction and affirm the trial court's permanent injunction. We affirm the judg-

ment of the court of civil appeals modifying the civil penalties assessed.

Texas Pet Foods, Inc. operates a poultry rendering plant in McLennan County near the City of Waco on a site adjacent to the Brazos River. The plant converts chicken and poultry offal into a protein supplement for animal feeds by a cooking process that is fully and ably described in the opinion of the court of civil appeals. The jury found, in thirty-eight special issues, a total of 581 violations of eight different kinds between April 11, 1975 and the date trial began, August 2, 1976. In special issue No. 33, the jury found that 478 of the 581 violations consisted of operating the sixth cooker without the required air pollution control operating permit during this time period. The jury findings are summarized in the court of civil appeals opinion.

Both parties filed applications for writ of error. In its application, the State asserts in a single point of error that the court of civil appeals erred in setting aside the injunction. Texas Pet Foods in its application asserts that there is no evidence to support the jury finding that the sixth cooker operated every day for the entire period of 478 days. In the trial court Texas Pet Foods had urged in a motion to disregard the jury's answer to special issue No. 33 that the only testimony adduced was of violations on three specific days during the period and that therefore, the finding in excess of three days was without evidence to support it. The motion also urged that the figure of 478 days was excessive by 138 days since the plant did not operate on Saturdays and Sundays. The court of civil appeals agreed with Texas Pet Foods' contention that the trial court's assessment of penalties for the operation of the cooker on Sundays was without probative evidence and accordingly, modified the penalties by reducing them for the 69 Sundays during the period.

We first address the propriety of the injunction. All three of the applicable stat-

1. The Texas Clean Air Act is Tex.Rev.Civ.Stat. Ann. art. 4477–5 (Vernon 1976); Texas Water Quality Act is Tex.Water Code Ann. § 21.001 et seq. (Vernon 1972); Texas Renderers' Licensing Act is Tex.Rev.Civ.Stat.Ann. art. 4477–6 (Vernon 1976).

utes require a finding of a present or threatened violation of the act. The pertinent sections are:

Upon application for injunctive relief and a finding that a person is violating or threatening to violate any provision of this Act or of any rule, regulation, variance or other order of the board, the district court shall grant the injunctive relief the facts may warrant.

Texas Clean Air Act, § 4.02(a).

Upon application for injunctive relief and a finding that a person is violating or threatening to violate any provision of this chapter or any rule, permit, or other order of the board, the district court shall grant the injunctive relief the facts may warrant.

Texas Water Quality Act, § 21.253(b) (now § 26.123).

[T]he Health Authority may bring an injunction suit in any district court of this state having jurisdiction and venue to compel compliance with any provision of this Act or restrain any actual or threatened violation thereof.

Texas Renderers' Licensing Act, § 19(b).

The time frame during which the violations in question occurred began on August 11, 1975 and ended on the day the trial began, August 2; 1976. The court of civil appeals viewed the findings as those of past violations and held that there were no findings of present or threatened violations. The court reasoned that because the State failed to request that issues be submitted to the jury inquiring about present or threatened violations, the State waived its right to an injunction since there was no legal basis for the injunction without such a finding by the jury. The court further concluded that the evidence did not conclusively establish present or threatened violations and that the finding could not be deemed as found by the court in support of the judgment as provided in Tex.R.Civ.P. 279. We believe that the court of civil appeals was in error.

Rule 693 provides: "The principles, practice and procedure governing courts of equity shall govern proceedings in injunctions when the same are not in conflict with these rules or the provisions of the statutes." Although a litigant has the right to a trial by jury in an equitable action, only ultimate issues of fact are submitted for jury determination. The jury does not determine the expediency, necessity, or propriety of equitable relief. *Alamo Title Co. v. San Antonio Bar Assn.*, 360 S.W.2d 814, 816 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.). The determination of whether to grant an injunction based upon the ultimate issues of fact found by the jury is for the trial court, exercising chancery powers, and not the jury. *Jones v. English*, 268 S.W.2d 686, 690 (Tex.Civ.App. —San Antonio 1954), aff'd 154 Tex. 132, 274 S.W.2d 666 (1955). As the court in *Alamo Title* correctly observed:

We do not consider the question of likelihood of [defendant's] resumption or continuation of the acts enjoined as being an ultimate issue of fact for the jury. . . . Although in Texas the findings on issues of fact are binding, equitable principles and the relief afforded by equity continue to be applied by the court itself, . . . Rule 693, Texas Rules of Civil Procedure . . . . A jury in equity, even under a blended system, does not decide the issue of expediency, necessity or propriety of equitable relief. If submitted, the issue would evoke only a conjectural and speculative surmise which, in our opinion, would not control the processes of equity. It was an element deducible from the circumstances for the court to consider in determining whether wrong or injury might be anticipated and whether chancery powers should be exercised. It constituted here, in effect, a mixed question of law and fact at most. Such questions are not for the jury in injunction cases.

360 S.W.2d at 816.

Texas Pet Foods and the court of civil appeals reason that the violations found were past violations extending over a period of some fourteen months and ending the day trial began. They reason that those findings will not support a trial court

determination that Texas Pet Foods is violating or is threatening to violate the acts involved. We disagree. If we accept their definition of a "present" violation, it would be necessary to find violations occurring after the trial had commenced, or even while the jury was returning its verdict. When the jury finds violations occurring and continuing up to or near the date of the trial, the trial court may, in equity, determine that the defendant has engaged in a settled course of conduct and may assume that it will continue, absent clear proof to the contrary. *Texas Pet Foods, Inc. v. State of Texas*, 529 S.W.2d 820, 827 (Tex. Civ.App.—Waco 1975, writ ref'd n. r. e.). The probability of the continuation of the prohibited practices is not a matter which is susceptible of direct proof, and injunctive relief is proper when the trial court finds it justified under the rules of equity, notwithstanding a defendant's cessation of the activity or solemn promises to cease the activity. *Alamo Title Co. v. San Antonio Bar Assn., supra*, at 817; *Magnolia Petroleum Co. v. State*, 218 S.W.2d 855, 861 (Tex.Civ. App.—Austin 1949, writ ref'd n. r. e.); *see* Newsom, *State Court Injunctions and Their Enforcement in Environmental Litigation*, 9 St. Mary's L.J. 821, 825 (1978).

Here, the jury found numerous violations over the period of fourteen months preceding the trial, and in granting injunctive relief, the trial court enjoined the very violations that the jury had found were occurring. The trial court necessarily determined that future violations of the statutes were likely to occur when it rendered its judgment granting the injunction.

In addition to enjoining the specific violations found by the jury, the trial court further enjoined Texas Pet Foods from an activity which the jury failed to find was occurring. Predicated on the past violations found by the jury, the trial court enjoined Texas Pet Foods from "causing or contributing or threatening to cause or contribute to the emission of odors or other air contaminants into the atmosphere in and around the Texas Pet Foods rendering facility in such concentration and of such duration as are or may tend to be injurious to or adversely affect human health or welfare, or as to interfere with the normal use and enjoyment of animal life, vegetation or property," an activity proscribed by the Clean Air Act §§ 4.01 and 1.03(3). The jury failed to find in their answer to special issue No. 1 that this violation had been established by a preponderance of the evidence. The trial court, however, obviously concluded, from the many other specific violations found by the jury, that this general prohibition in the injunction was necessary and justified under the evidence.[2] The trial court was not precluded by the jury's failure to answer special issue No. 1 affirmatively from exercising its equity jurisdiction and finding that injunctive relief from future violations under these circumstances was warranted. The likelihood that violations would occur in the future would not have been a proper issue to submit to the jury; the question is for the trial court to decide as a court of equity. *See Alamo Title Co. v. San Antonio Bar Assn., supra*. The trial court's judgment recites that, in addition to considering the State's motion for judgment, "such additional considerations and findings as were authorized by law" were made. This recitation constituted a recognition by the trial

2. The jury specifically found that during the period September 5, 1975 to August 2, 1976, Texas Pet Foods, Inc.: (1) failed to have installed proper hooding and duct work to pull all emissions from its hotwell, feather meal holding tanks, conveying system, or *its feather meal driers through the venturi scrubber* on 9 separate days; (2) failed to control openings to its rendering plant building so as to maintain a negative pressure within the building on 13 separate days; (3) failed to maintain its air pollution abatement equipment in a fully operable and functioning condition on 13 separate days; (4) discharged solids to its ridge-and-furrow field system on 40 separate days; and (5) failed to maintain a good cover crop on its ridge-and-furrow field system on 24 separate days. The record shows that these violations, independently or in combination, would cause obnoxious odors to emanate from the plant.

court that it was exercising its proper function in determining the scope of the injunction it found to be supported by the jury findings. When it is determined that the statute is being violated, it is within the province of the district court to restrain it. The doctrine of balancing the equities has no application to this statutorily authorized injunctive relief. *See Gulf Holding Corp. v. Brazoria County*, 497 S.W.2d 614, 619 (Tex. Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.); *Magnolia Petroleum Co. v. State, supra*, at 860. The general injunctive relief granted by the trial court is supported by the evidence and the findings of specific violations by the jury. *See Reynolds-Penland Co. v. Hexter B. Lobello*, 567 S.W.2d 237, 246 (Tex.Civ.App.—Dallas 1978, writ dism'd by agr.); *Cogdell v. Ft. Worth Nat'l Bank*, 544 S.W.2d 825, 829–30 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.); *Alamo Title Co. v. San Antonio Bar Assn., supra*.

We next consider the contention in Texas Pet Foods' application that there is no evidence to support the jury's finding that the sixth cooker, for which no operating permit had been obtained as required by § 3.28(a) of the Texas Clean Air Act, had been operated for more than three days during the entire period of 478 days from April 11, 1975 to August 2, 1976. The court of civil appeals reduced the number of days by 69 to 409, holding that there is no evidence to support the finding that the sixth cooker operated on Sundays. Texas Pet Foods now argues that even as modified, the penalties assessed for this violation were excessive in that there is no evidence that the sixth cooker operated more than three separate days during that period.

The State asserts that under the holding in *State v. Harrington*, 407 S.W.2d 467 (Tex.1966), the State is not required to show that the sixth cooker actually produced materials on each and every day during the 478 days, but only that the cooker remained part of the Texas Pet Foods operation, that it was capable of producing, and that it was being operated and maintained in order to attain an end result appropriate to the rendering enterprise. In *Harrington*, it was contended that the State failed to prove that an oil well was actually producing during each of the 3,650 days the jury found that the well was being operated. We said:

> The well remained unplugged and continuously ready to produce its allowable. It was maintained in an operable condition and production was regularly obtained therefrom. [D]efendants contend that 'operation' means only 'producing.' The words 'operated', as used in the charge means everything that is done to maintain an oil well so as not to abandon it. We hold, in this case, that the well was being operated and maintained so as to attain the result appropriate to the nature of the enterprise. . . . The well was maintained and operated so that it could produce oil at a moment's notice. The pleadings were sufficient and the evidence introduced thereon is conclusive as to the duration of the operation of the well.

407 S.W.2d at 479.

Here, there was direct testimony of the operation of the sixth cooker on three specific occasions during the 478-day period. Although Texas Pet Foods introduced no direct testimony of when the cooker was placed into operation or when it was operated, both the president of the company and the plant manager testified that all six cookers were operated during production on a regular basis. The plant operated on a five-and-one-half to six-day work week, a fact corroborated by area residents. Under the rationale of *Harrington*, the jury was entitled to find that the sixth cooker was being "operated" on a daily basis for six days a week even when it was not actually producing a product by means of a cooking cycle. According to all of the evidence in the record, the cooker was available and operable full-time and was operated along with the other five cookers. It was capable of operating and producing even when it was not actually doing so. Since the evidence supports a finding of 409 days operation, the modified judgment was not erroneous.

The judgment of the court of civil appeals is affirmed in part and reversed in part. As to the injunction, the judgment of the court of civil appeals is reversed and that of the trial court is affirmed; the judgment of the court of civil appeals modifying the civil penalties assessed is affirmed.

CAMPBELL, J., not sitting.