Cecil E. KNEIP, Sylvia A. Kneip and Gary Kneip, Appellants,

v.

UNITEDBANK–VICTORIA, Appellee.

No. 13–86–291–CV.

Court of Appeals of Texas, Corpus Christi.

June 30, 1987.

Ken Mackey, Austin, for appellants.

Mark D. Wilson, Houston, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

Appellants, Cecil and Sylvia Kneip and their son, Gary, sued Unitedbank-Victoria for fraudulently inducing them to enter into a loan agreement with the bank. The bank counterclaimed for recovery on the promissory note issued by the Kneips in exchange for the loan from the bank, and for foreclosure on the deed of trust securing the loan. The Kneips received favorable jury findings on all special issues. However, the trial court disregarded the jury's findings concerning the bank's counterclaim and entered judgment that the Kneip's recovery for fraud be offset by the amount of the bank's loan to them. The result was a judgment that the Kneips pay $47,546.55 to the bank, and that the deed of trust in favor of the bank would remain in effect. Both parties appeal.

The Kneips owned and operated a small business which was liquidated in 1983. After selling all its assets, the business still owed the bank over two hundred thousand dollars which it could not repay. This debt was unsecured, although Cecil and Gary Kneip were personal guarantors for the full amount that their company owed to the bank.

Unable to satisfy this debt, the Kneips and Tom Tyng, president of the bank, worked out the following deal. The bank loaned $269,000.00 to Cecil and Sylvia Kneip, which Gary Kneip personally guaranteed to be repaid. They immediately used this new loan to pay off the amount owed to the bank by their family business.

The parties dispute the remaining terms of the deal. The bank stands by the written provisions of the promissory note and deed of trust. The deed of trust provides that the new loan is secured by an undeveloped sixty-acre tract of land owned by Cecil and Sylvia Kneip. Tyng admitted that the

net effect of the new transaction was that the bank was no longer an unsecured creditor, but was now a secured one.[1]

All three Kneips testified that they had an oral agreement with Tyng that the bank would never actually look to the sixty-acre tract for repayment of the loan.[2] The Kneips contend that Tyng agreed, on behalf of the bank, that the sole collateral for the new loan was to be Cecil Kneip's life insurance policies proceeds, totalling $500,000.00, that the bank would pay the premiums as they came due, and that the listing of the sixty acres as collateral in the deed of trust was merely to appease government bank examiners. They also contend that Tyng promised that the note and accumulated interest would be automatically renewed at the end of each year, until Cecil died, when the life insurance proceeds would be used to satisfy the debt.

Tyng denied making these oral agreements but admitted that he orally committed the bank to paying several of Cecil Kneip's monthly insurance premiums, which the bank did in fact pay. When a new bank president replaced Tyng, he refused to abide by the supposed oral agreement and demanded that the Kneips begin making payments, whereupon the Kneips brought this suit for fraud.

The Kneips bring three points of error. Their first and second points of error complain that the trial court improperly disregarded the jury's answers concerning the Kneips' defense of estoppel to the bank's counterclaim for recovery on the promissory note and for foreclosure under the deed of trust.

The parties actually argue in terms of "promissory estoppel," which is merely one type of equitable estoppel or estoppel in pais. Promissory estoppel is not applicable in the case at bar for two reasons.

---

1. There was testimony that the Kneips' only asset of substantial value was the sixty-acre tract of land. There was also testimony that Cecil and Sylvia would have attempted to make the land their homestead, and thus exempt the land from creditors' claims, had the bank sought to enforce Cecil's and Gary's personal guarantees of the company debt.

2. We note that the parol evidence rule will not prevent proof of fraud which induced the execution of a contract. *Santos v. Mid-Continent Refigerator Co.*, 471 S.W.2d 568, 569 (Tex.1971); *Allen v. Boatwright*, 618 S.W.2d 856, 863 (Tex. App.—Waco 1981, no writ).

First, the elements of promissory estoppel were not submitted to the jury. *See Fretz Construction Co. v. Southern National Bank,* 626 S.W.2d 478, 480 (Tex.1981). Second, promissory estoppel is ordinarily unavailable where, as here, a written contract between the parties exists which governs the subject matter of the promise. *See Wheeler v. White,* 398 S.W.2d 93, 97 (Tex.1965). However, as we note below, the Court did properly instruct the jury on the elements of equitable estoppel in general.

By its answer to Special Issue No. 7, the jury found that the bank represented to the Kneips that it would look only to the life insurance proceeds, and not to the sixty acres of land, for repayment of the note. By Special Issues Nos. 8 and 9, the jury found that the bank was estopped from foreclosing on the land under the deed of trust and from recovering from Gary Kneip under his personal guarantee. The trial court disregarded these findings and entered judgment that the bank recover on its counterclaim for the debt and that the deed of trust would remain in full force and effect.

█ A trial court may disregard only those special issue findings which are immaterial or which have no support in the evidence. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex.1967); *Mail Box, Inc. v. Communicators, Inc.,* 703 S.W.2d 783, 784 (Tex.App.—Corpus Christi 1985, no writ); Tex.R.Civ.P. 301. Clearly, the estoppel findings were material to the Kneips' defense to the bank's counterclaim and are amply supported by the evidence. However, estoppel is an equitable question, and it is not for the jury to determine the expediency, necessity, or propriety of equitable relief. *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979); *Merrick v. Evergreen Helicopters, Inc.,* 649 S.W.2d 807, 808 (Tex.App.—Corpus Christi 1983, no writ) (injunction cases); Tex.R. Civ.P. 693 (injunctions). Rather, only ultimate issues of fact should be submitted to the jury on equitable issues. *Texas Pet Foods, Inc.,* 591 S.W.2d at 803.

The purpose of estoppel is to prevent inconsistency and fraud resulting in injustice, and to protect those who have been misled by that which on its face was fair. *Kuehne v. Denson,* 148 Tex. 54, 219 S.W.2d 1006, 1009 (1949); *see also Roberts v. Haltom City,* 543 S.W.2d 75, 80 (Tex. 1976). The trial court in the instant case properly instructed the jury in its charge on the elements of equitable estoppel, then globally submitted the question of estoppel to the jury. The elements of estoppel are: (1) a false representation or concealment of material facts; (2) made with knowledge of the facts; (3) the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; (4) it must have been made with the intention that it should be acted on; and (5) the party to whom it was made must have relied or acted on it to his detriment. *Traylor v. Gray,* 547 S.W.2d 644, 652 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

█ While we find ample evidence to support the jury's implicit findings that the elements of estoppel were satisfied, we are also aware that the imposition of the estoppel doctrine is ultimately a question of law for the trial court, exercising its chancery powers. *Alamo Title Co. v. San Antonio Bar Association,* 360 S.W.2d 814 (Tex.Civ. App.—Waco 1962, writ ref'd n.r.e.); *see Jones v. English,* 268 S.W.2d 686 (Tex.Civ. App.—San Antonio 1954), *aff'd,* 154 Tex. 132, 274 S.W.2d 666 (1955). Whether to impose the equitable remedy of estoppel is a question to be determined by the trial court, applying established principles of equity, with which the jury is not presumed to be familiar. *See Jones v. English,* 268 S.W.2d at 690. Without a showing that inequity resulted, the judgment of the trial court should not be disturbed. *Nilsen v. Bonugli,* 220 S.W.2d 178, 180 (Tex.Civ.App. —San Antonio 1949, no writ); *see Foust v. Hanson,* 612 S.W.2d 251, 253 (Tex.Civ.App. —Beaumont 1981, no writ); *Scott v. Scott,* 347 S.W.2d 288, 290 (Tex.Civ.App.—Waco 1961, writ ref'd n.r.e.). The trial court perceived that the most equitable result was to allow the bank to maintain its right to collect *the amount of the note and retain*

its security interest in the appellants' real property. We overrule the Kneips' first and second points of error.

■ The Kneips complain in their third and final point of error that the trial court erred in failing to award them prejudgment interest on their damages. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985). However, because the Kneips did not specifically plead for prejudgment interest, they have waived their right to complain on appeal. *Benavides v. Isles Construction Co.*, 726 S.W.2d 23 (Tex.1987) ("Where prejudgment interest is sought at common law as an element of damages, the plaintiff must plead for it."); *Texas Industries, Inc. v. Lucas*, 715 S.W.2d 683, 686–87 (Tex.App.—Houston [14th Dist.] 1986, writ requested) (a prayer for general relief is insufficient by itself to support an award of prejudgment interest); *Merit Drilling Co. v. Honish*, 715 S.W.2d 87, 94 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The Kneips third point of error is overruled.

The bank raises nine points of error on appeal. The first seven concern the jury's award of damages to the Kneips.

The jury awarded the following damages:

1) For "pecuniary loss proximately caused by" the Bank's conduct:

| | |
|---|---|
| Cecil Kneip: | $40,000.00 |
| Sylvia Kneip: | $40,000.00 |
| Gary Kneip: | $30,000.00 |

2) For mental anguish:

| | |
|---|---|
| Cecil Kneip: | $40,000.00 |
| Sylvia Kneip: | $40,000.00 |
| Gary Kneip: | $30,000.00 |

3) Exemplary damages for the Bank's "malicious" conduct:

| | |
|---|---|
| Cecil Kneip: | $40,000.00 |
| Sylvia Kneip: | $40,000.00 |
| Gary Kneip: | $30,000.00 |

The trial court entered judgment in accordance with the jury's findings on these damages issues.

By its first four points of error, the bank avers that there is no evidence or insufficient evidence to support the jury's award for the Kneips' "pecuniary losses." In essence, the bank argues that, aside from the mental anguish evidence, the Kneips presented no evidence to establish any other injury.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ The term "pecuniary loss" has been broadly defined by the courts of this State. Generally, the term has been defined as including money and everything that can be valued in money. *See Nagle v. Nagle*, 617 S.W.2d 811, 813 (Tex.Civ.App.—Houston [14th Dist.] 1981), *rev'd, on other grounds* 633 S.W.2d 796 (Tex.1982); *Exxon Corp. v. Brecheen*, 519 S.W.2d 170, 184 (Tex.Civ.App.—Houston [1st Dist.]), *rev'd on other grounds*, 526 S.W.2d 519 (Tex. 1975); *Borak v. Bridge*, 524 S.W.2d 773, 776 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Black's Law Dictionary (5th ed. 1979) defines the term as "A loss of money, or of something by which money or something of money value may be acquired."

■ Appellants pled for and sought recovery against appellees for common law fraud. Under the common law fraud measure of damages, a defrauded party is entitled to recover in tort such damages as result directly from the fraud. *Traylor v. Gray*, 547 S.W.2d at 656. The measure of damages is the pecuniary loss suffered as a consequence of the reliance upon the truth of the representation. *Wright v. Carpenter*, 579 S.W.2d 575, 578 (Tex.Civ.App.— Corpus Christi 1979, writ ref'd n.r.e.). The measure of damages in a fraud case should be those damages which give the complaining party the actual amounts of his loss resulting directly and proximately from the

fraud practiced upon him. *Morriss-Buick Co. v. Pondrom,* 131 Tex. 98, 113 S.W.2d 889, 890 (Tex.Comm'n App.—1938, opinion adopted).

Under the general label of "pecuniary damages," recovery has been allowed for such diverse items as: loss of mortgage subordination rights, loss of rent, and profits and architect's fees, *Pasadena Associates v. Connor,* 460 S.W.2d 473 (Tex.Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); reasonable and necessary expenses incurred in performance of a contract, *Delhi Pipe Line Corp. v. Lewis, Inc.,* 408 S.W.2d 295 (Tex.Civ.App.—Corpus Christi 1966, no writ); cost of removing defective and mislocated foundation, *Smart v. United States Fidelity and Guarantee Co.,* 513 S.W.2d 291 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). None of the aforementioned examples include a recovery for personal injury damages as alleged by the Kneips.

Our review of the record indicates that the only evidence to support the award of pecuniary damages is the testimony of Cecil Kneip that he incurred a charge of $1,442.15 to obtain a title policy as part of his closing fees on the loan. He also testified that he incurred between $2,000.00 and $3,000.00 in expenses as a result of his lawyers' activities in taking depositions, obtaining subpoenas and related charges. While this is some evidence that the Kneips suffered some pecuniary losses as a result of the fraudulent acts causing them to enter into the loan, it is totally insufficient to support the jury award of $110,000.00 in pecuniary losses.

■ In their brief the Kneips argue that several factors contribute to their pecuniary loss which could be assigned a monetary value. The Kneips initially point out that an encumbrance of the sixty-acre farm was a monetary detriment to them. This is not an action in trespass to try title or for slander of title. The Kneips offered no evidence of how the existence of this encumbrance in any way adversely affected them. The Kneips also argue that the bank was charging ten percent interest on the note which constituted another loss to them. We find it difficult to understand how this could be any loss to the Kneips when it is undisputed that they never made nor intended to make any payments on the note. The Kneips next argue that, but for the encumbrance on the property, they could have sold the sixty-acre tract of land. This is a misstatment of the record. Cecil Kneip testified that he told Tyng, while they were inspecting the property, that if he *ever* decided to sell it, he would advertise it in Austin, Houston, San Antonio, and Corpus Christi newspapers and that some doctor, attorney, or bank person would be glad to pick it up because it was a beautiful place. We have carefully reviewed the record and we find no instance where any of the Kneips indicated that they were prevented from selling their property because of the incumbrance against it.

Next, the Kneips argue that Gary Kneip was forced to sign a personal guarantee on the note which caused a pecuniary loss to him. Again, this is nothing more than an unsupported presumption. There is no evidence in the record that Mr. Kneip's personal guarantee in any way affected his financial dealings with others.

■ Finally, the Kneips argue that they incurred expenses involved in bringing this law suit. We have previously dealt with and acknowledged that these consequential expenses concerning the litigation are some evidence of a pecuniary loss. However, we do not believe that attorney's fees are properly assignable to the category of pecuniary losses. Initially, the Kneips are unable to put a precise figure on their attorney's fees because their fee arrangement was a forty percent contingent fee with their attorneys. Attorney's fees are not recoverable as actual damages in a fraud case. *Kilgore Federal Savings & Loan Association v. Donnelly,* 624 S.W.2d 933, 938 (Tex. App.—Tyler 1981, writ ref'd n.r.e.); *Hennigan v. Harris County,* 593 S.W.2d 380, 385 (Tex.Civ.App.—Waco 1979, writ ref'd n.r. e.). *But see Nagel,* 617 S.W.2d at 813. The bank's points of error one, two, and three are overruled. The bank's fourth point of error is sustained.

■ We do not agree with the bank's contention that the other $220,-

000.00 must also be deleted, since mental anguish damages and exemplary damages are independent of pecuniary loss; reversal of one award does not automatically eliminate the others. As discussed below in response to the bank's sixth and seventh points of error, we find sufficient evidence to sustain the award of mental anguish damages. We also sustain the award of exemplary damages since the bank does not bring a point of error challenging them; in any event, as previously outlined, ample evidence of the bank's bad faith exists to sustain that award. We reverse only the award for pecuniary damages.

■ In its fifth point of error, the bank contends that a suit in tort based on fraud in the inducement cannot support an award of damages for mental anguish. The bank concedes, however, the well-settled rule that mental anguish damages are recoverable for intentional torts or where there is accompanying physical injury. *See, e.g., Farmers & Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981). This rule has now been changed. In *Saint Elizabeth Hospital v. Garrard,* 730 S.W.2d 649 (1987), our Supreme Court abolished the requirement for pleadings or proof of physical injury as a prerequisite to the recovery of damages for mental anguish. Fraud in the inducement is, of course, an intentional tort, and the Kneips testified to physical injury. An injured party is entitled to recover in a tort action those damages which result directly, naturally and proximately from fraud. *Traylor v. Gray,* 54'/ S.W.2d at 656. We overrule the bank's fifth cross-point of error.

The bank's sixth and seventh points of error assert that there is no evidence or insufficient evidence to support the jury's finding that the Kneips have suffered compensable mental anguish injuries.

"Mental anguish is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation." *Trevino v. Southwest-*

*ern Bell Telephone Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

■ As a result of the bank's fraudulent conduct, Cecil Kneip testified that he was concerned over the future fate of his land. He testified that he suffered from loss of sleep, headaches, and that his arthritis had worsened. He admitted he suffered these same problems before entering into the agreement with the bank, but that they had grown worse since then. Sylvia Kneip testified that she suffered from loss of sleep, headaches, and a nervous stomach. She also admitted to previously suffering from these maladies. Gary Kneip testified that he suffered from sleep loss and stomach upset, and that he had cried when he learned of the bank's actions.

The bank cites *Group Hospital Services, Inc. v. Daniel,* 704 S.W.2d 870 (Tex.App.—Corpus Christi 1985, no writ), where we held that the evidence was insufficient to sustain a mental anguish award. We held that evidence that the plaintiff was "scared" and suffered from headaches and stomach disorder, symptoms identical to those she had before the wrongdoing, did not support an award of mental anguish of $125,000.00. *Id.* at 878–79.

*Daniel* is distinguishable. In the instant case, the Kneips testified to more symptoms than those suffered by the plaintiff in *Daniel,* and, although some of the symptoms existed prior to the bank's conduct, the Kneips testified that their headaches, arthritis, and stomach problems worsened as a result of the fraud perpetrated upon them.

This case is similar to that cited by the Kneips, *Gonzales v. Southwestern Bell Telephone Co.,* 555 S.W.2d 219 (Tex.Civ.App.—Corpus Christi 1977, no writ), where we affirmed a jury award for mental anguish based on symptoms similar to those of the Kneips. We overrule the bank's sixth and seventh points of error.

■ The bank's eighth point of error complains that the trial court erred in overruling its motion for new trial on the ground that the verdict was based on bias,

prejudice, or sympathy. The thrust of its argument is that the jury's answers to the special issues on damages "bear no rational relation to the evidence." The bank also complains of the Kneip's trial attorney's characterization of the sixty acres owned by the Kneips as "the family farm," and quotes several areas from the record to argue that the case "was tried not on the facts, but on sympathy."

The bank made no trial objection to any of the trial comments it now complains of, and so has waived all but incurable error as to them. *See generally Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex.1979); *Turner v. Turner*, 385 S.W.2d 230, 237 (Tex.1964). We find no error in the Kneips' testimony that the land was important to them, or in their attorney's argument that the bank be required to pay for its wrongdoing, let alone incurable error. In fact, the Kneips' attorney, in his closing argument, admonished the jury not to use sympathy when deciding the case. Moreover, the mere fact that the jury chose to award the damages it did does not amount to a clear showing of bias, passion, disregard of evidence, or other improper motive, such that we may disregard the jury's findings. *See, e.g., Dallas Railway & Terminal Co. v. Farnsworth*, 148 Tex. 584, 227 S.W.2d 1017, 1022 (1950); *Beverly Enterprises, Inc. v. Gaines*, 652 S.W.2d 600, 602 (Tex.App.—Waco 1983, no writ).

It was the jury's province to assess damages to compensate the Kneips for the injury inflicted by the bank's former officer. Although the assessed damages were undeniably large, the bank never requested a remittitur or brought a point of error specifically alleging them to be excessive. Nor were the references to the land as a "family farm," when it actually might have been considered a small ranch, reversible. We overrule the Bank's eighth point of error.

By its ninth and final point of error, the bank contends that the Kneips' attorney improperly addressed the jury during the Kneips' case in chief by reading aloud a document to the jury which had already been admitted into evidence. The Bank avers that the Kneips' attorney read to the jury with improper voice inflexions and hand gestures, but has failed to provide a reviewable record to this Court by a bill of exceptions to so indicate. *See Liberty Mutual Insurance Co. v. Rodriguez*, 537 S.W.2d 522 (Tex.Civ.App.—San Antonio 1976, no writ).

The bank also contends that the mere reading of the document admitted into evidence was error. We disagree. Counsel is permitted to read admitted documents to the jury during closing argument. *Murchison v. Ballard*, 178 S.W.2d 554, 558 (Tex.Civ.App.—San Antonio 1944, writ ref'd w.o.m.). It might be unusual for counsel to do so generally during his case in chief, but it is not reversible error to do so since the jury has access to the document anyway. We overrule the bank's ninth point of error.

We now come to our final disposition in this cause. As a general rule, when it appears to this Court that the error committed below affects only a part of the judgment below and the error in one part of the judgment is severable usually the judgment is reversed and a new trial ordered only as to that part affected by the error. *Mader v. Aetna Casualty and Surety Co.*, 683 S.W.2d 731, 735 (Tex.App. —Corpus Christi 1984, no writ); *see* Tex.R. App.P. 81(b)(1). However, since both the Kneips' and the Bank's causes of action arose out of the execution of the note and deed of trust, which was the focal point of the entire lawsuit, we find that a severance would not be in the interest of justice and would be unfair to the parties to retry the case piecemeal. The judgment of the trial court is accordingly REVERSED AND the cause is REMANDED for a new trial.

DORSEY, Justice, concurring.

I concur with the result reached by the majority that the cause be reversed and remanded for a new trial because of the insufficiency of the evidence of the Kneips' pecuniary loss.

However, I disagree with the court's discussion and holding that the trial court

may disregard the findings by the jury that the bank was estopped from foreclosing on the Kneips' sixty acres of land under the deed of trust and from recovering under the guarantee executed by Gary Kneip because the trial court was exercising its chancery powers.

I do not perceive the question of estoppel to be an exception to the general rule that the trial court may disregard the answers of the jury only if there is no evidence to support them or if the answers are immaterial. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex.1967).

The cases cited by the majority for the proposition that the findings by the jury are not binding on the trial court in the exercise of its equitable power are not estoppel cases, but cases involving injunctive proceedings.

Injunction is a distinctly equitable remedy. *Hamilton v. Davis,* 217 S.W. 431 (Tex. Civ.App.—Austin 1919, writ ref'd). The rule is well recognized that the determination of whether or not to grant an injunction is not an ultimate issue of fact for the jury, but is an issue to be decided by the trial court in the exercise of its chancery powers. *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800 (Tex.1979); *Alamo Title Co. v. San Antonio Bar Association,* 360 S.W.2d 814, 816 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.) The court in *Alamo Title* makes the distinction that in Texas, although findings on issues of fact are binding, equitable principles and relief afforded in equity are to be applied by the court.

The rule relied on by the majority has been referred to by the Beaumont Court of Civil Appeals in upholding a trial court's order of specific performance when the jury found the underlying contract to be ambiguous, and thus a supposed bar to specific performance. However, the Beaumont Court held that the question of whether a contract is ambiguous is always one of law to be determined by the court rather than the jury. *Foust v. Hanson,* 612 S.W.2d 251, 253 (Tex.Civ.App.—Beaumont 1981, no writ).

The rule applied in injunction cases relied on by the majority should not carry over into estoppel matters. No findings of fact can mandate an injunction; however, certain findings are necessary in order for an injunction to lie. *Texas Pet Foods, Inc.,* 591 S.W.2d at 803–805.

It has been consistently held that estoppel is ordinarily a question of fact and should be submitted to the jury. *See Donaldson v. Lake Vista Community Improvement Association,* 718 S.W.2d 815, 818 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Page Airways, Inc. v. Associated Radio Service Co.,* 545 S.W.2d 184, 192 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.); *Astro Sign Co. v. Sullivan,* 518 S.W.2d 420, 426–427 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

To require estoppel to be submitted to a jury when there is a factual question to be resolved, but to allow the trial judge to disregard that finding, regardless of the evidence or materiality, is to require a needless exercise.

KENNEDY, Justice.

I hereby join with Justice Dorsey's concurrence.