ACCEPTED
15-25-00182-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/1/2025 5:16 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00182-CV

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/1/2025 5:16:00 PM
CHRISTOPHER A. PRINE
Clerk

———————

Texas Health and Human Services Commission, et al.,

*Appellants*,

*v.*

Kenneth Collier, Taneshu Collier, TRELS Home for Children, and TRELS Home LLC

*Appellees.*

———————

On Appeal from the
345th Judicial District Court, Travis County

———————

**APPELLANTS' RESPONSE TO APPELLEES' MOTION FOR TEMPORARY ORDERS UNDER TRAP 29.3**

———————

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief for General Litigation Division

KELSEY HANSON
Assistant Attorney General
Texas Bar No. 24096654

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 224-1244| FAX: (512) 320-0667
Kelsey.hanson@oag.texas.gov

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellants herein provide this Court with the following list of parties and the names and addresses of all trial and appellate counsel:

| | |
|---|---|
| **Defendants-Appellants:** | Texas Health and Human Services Commission, et al. |
| **Trial & Appellate Counsel for Defendants-Appellants:** | Kelsey Hanson<br>Texas Bar No. 24096654<br>Assistant Attorney General<br>General Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>kelsey.hanson@oag.texas.gov<br>Phone (737) 224-1244<br>Fax (512) 320-0667 |
| **Plaintiffs-Appellees:** | Kenneth Collier, Taneshu Collier, TRELS Home for Children, and TRELS Home LLC |
| **Trial & Appellate Counsel for Plaintiffs-Appellees:** | Kyle Ferguson<br>John Ferguson<br>Meghan Rudnai<br>Ferguson Law Practice, PLLC<br>1017 RR 620 S., Suite 222<br>Lakeway, TX 78734<br>Telephone: (512) 996-5407<br>kyle@fergusonlawpractice.com<br>john@fergusonlawpractice.com<br>meghan@fergusonlawpractice.com |
| **Trial Judge:** | Hon. Donnie Burgess |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ....................................................1

RECORD REFERENCES ....................................................................................2

TO THE HONORABLE FIFTEENTH COURT OF APPEALS: ............................3

STATEMENT OF FACTS: ...................................................................................3

    I.      Factual Background.......................................................................3

    II.     Statutory Background....................................................................5

    III.    Procedural History........................................................................9

STANDARD OF REVIEW ..................................................................................10

ARGUMENTS....................................................................................................11

    I.      Appellees are Unlikey to Succeed on the Merits ....................11

    II.     The Balance of Equities Favors Appellants............................15

    III.    If this Court Grants Appellees' Motion, Any Relief Must Be Limited ...19

PRAYER...........................................................................................................22

CERTIFICATE OF SERVICE .............................................................................24

# TABLE OF AUTHORITIES

**Cases**

*City of El Paso v. Heinrich*,
284 S.W.3d (Tex. 2009) ...................................................................................15

*In re Abbott*,
645 S.W.3d (Tex. 2022) ..................................................................................20

*In re State*,
711 S.W.3d (Tex. 2024) ........................................................................ passim

*Muth v. Voe,*
691 S.W.3d (Tex. App.—Austin 2024, pet. filed)................................14

*State v. Tex. Pet Foods, Inc.*,
591 S.W.2d (Tex. 1979) ...................................................................................15

**Statutes**

19 Tex. Admin. Code Ch. 707 ...................................................................4, 6

26 Tex. Admin. Code § 745.497 (c)(1) ................................... 8, 9, 13, 15

26 Tex. Admin. Code § 745.8401(a)(1) .........................................................6

26 Tex. Admin. Code § 745.8401(b)(1) .....................................................4, 6

26 Tex. Admin. Code § 745.901 ......................................................... 7, 13

26 Tex. Admin. Code §745.491 ......................................................... 12, 14

26 Tex. Admin. Code Ch. 745 Subch. K, Div. 1 .......................................4

26 Tex. Admin. Code Ch. 748-749 ...........................................................4, 6

26 Texas Administrative Code § 745.497 .....................................................8

Tex. Civ. Prac. & Rem. Code § 51.014(b)................................................22

Tex. Fam. Code Ann. § 264.107 ....................................................................6

Tex. Fam. Code Ann. § 264.1261(b-4) .........................................................4

Tex. Gov't Code § 2001.038(a)....................................................................12

Tex. Gov't Code Ann. § 2001.038(a) ....................................................................13

Tex. Hum. Res. Code § 42.048 .............................................................................5

Tex. Hum. Res. Code Ann § 42.002(18) ......................................................... 7, 13

Tex. Hum. Res. Code Ann § 42.048 ............................................................... 13, 15

Tex. Hum. Res. Code Ann. § 42.001 .....................................................................7

Tex. Hum. Res. Code Ann. § 42.042(e) ...............................................................4

Tex. Hum. Res. Code Ann. § 42.044(a) ...............................................................4

Tex. Hum. Res. Code Ann. § 42.048(b) ......................................................... 6, 15

Tex. Hum. Res. Code Ann. §42.041 .....................................................................6

Tex. Hum. Res. Code Ann. §42.042 .....................................................................6

Tex. Hum. Res. Code Ch. 42 ...........................................................................6, 7

**Rules**

5 U.S.C. §§ 551–559 ...........................................................................................12

Tex. R. App. P. 29.3 ................................................................................... passim

Tex. R. Civ. P. 693 ..............................................................................................15

**STATEMENT REGARDING ORAL ARGUMENT**

In their Motion for Temporary Order Under TRACP 29.3, Appellees request oral arguments. Appellants do not believe oral arguments will assist the Court in deciding whether relief under TRACP 29.3 should be granted or denied. Appellants therefore, respectfully ask that this Court deny oral argument and set the case for submission on the briefs. However, if the Court grants Appellees' request for oral argument, Appellants ask to participate.

# RECORD REFERENCES

"CR" refers to the clerk's record for Trial Court Cause No. D-1-GN-20-000139 dated November 22, 2024. "RR1" refers to Volume 1 – Master Index of the Reporter's Record for the October 14, 2025, hearing on Defendant's Plea to the Jurisdiction and Plaintiffs' Application for Temporary Injunction in Trial Court Cause No. D-1-GN-25-004379. "RR2" refers to Volume 2 – Transcript Volume of the Reporter's Record for the October 14, 2025, hearing on Defendants' Plea to the Jurisdiction and Plaintiffs' Application for Temporary Injunction in Trial Court Cause No. D-1-GN-25-004379. "RR3" refers to Volume 3 – Exhibit Volume of the Reporter's Record for the October 14, 2025, hearing on Defendants' Plea to the Jurisdiction and Plaintiffs' Application for Temporary Injunction in Trial Court Cause No. D-1-GN-25-004379.

**TO THE HONORABLE FIFTEENTH COURT OF APPEALS:**

Appellants, Texas Health and Human Services Commission ("HHSC"), Cecile Erwin Young, in her official capacity as Executive Commissioner of HHSC, Laura Castillo, in her official capacity as Director of Heightened Monitoring within HHSC, and the Department of Family and Protective Services ("DFPS") (collectively, "Appellants") file this Response to Kenneth Collier, Taneshu, Collier TRELS Home, LLC, and TRELS Home for Children's (collectively, "Appellees") Motion for Temporary Order Under TRACP 29.3.

The Court should deny Appellees' motion for two reasons. First, Appellees are unlikely to succeed on the merits of their claims, and "[t]here is little justice in allowing a party who will very likely lose on the merits to interfere with the legal rights of the opposing party during the appeal." *In re State*, 711 S.W.3d 641, 645 (Tex. 2024). Second, the "equitable balanc[e] of [the] harms" favors the Appellants. *Id.* at 645.

### STATEMENT OF FACTS:

#### I. Factual Background

Kenneth Collier and Taneshu Collier (collectively "the Colliers") own and operate residential treatment facilities in the state of Texas under two legal entities: (1) TRELS Home for Children, and (2) TRELS Home LLC. CR 5 ¶11. The Colliers

3

created TRELS Home for Children on August 21, 2018, and created TRELS Home LLC on February 19, 2021. *Id.* Appellees refer to the three business operations relevant to this lawsuit based on where each facility is located: (1) Lewis Street; (2) Callahan, and (3) Hondo. RR2 33:19-23;29:9-12; 54:6 to 55:3.

Children in the State's custody and care can be placed in licensed residential childcare operations pursuant to contracts entered into by DFPS or one of its private Single Source Continuum Contractors ("SSCCs") under the State's Community-Based Care Plan. Tex. Fam. Code Ann. § 264.1261(b-4). As the agency that regulates these types of operations, HHSC has weighted minimum standards of care that each operation must meet. 26 Tex. Admin. Code Chapter 745 Subchapter K, Division 1 (Overview of Inspections an Investigations); 26 Tex. Admin. Code Chapter Chapters 748-749; Tex. Hum. Res. Code Ann. § 42.042(e). HHSC conducts routine inspections to ensure compliance and also investigates violations of those standards. *Id* at, § 745.8401(a)(1); Tex. Hum. Res. Code Ann. § 42.044(a). DFPS is the agency that conducts investigations of abuse, neglect or exploitation at childcare operations. 26 Tex. Admin. Code § 745.8401(b)(1); 19 Tex. Admin. Code Ch. 707. When warranted, an operation may be placed on additional ("heightened") monitoring

where necessary to protect the health, safety and well-being of children in foster care.[1]

Appellee Taneshu Collier runs the Lewis Street operation as a "controlling person." On March 10, 2025, the Lewis Street operation was placed on heightened monitoring as a result of a concerning history of standards violations and an abuse/neglect investigation. RR2 55:6-9. Subject to its regulations, HHSC decided to also extend heightened monitoring to the Callahan and Hondo operations because these operations were similarly subject to the control of Appellee Taneshu Collier. RR2 70:4-71:5.

While not challenging HHSC's actions regarding the Lewis Street facility, the Appellees are challenging the placement of the Callahan and Hondo facilities on heightened monitoring through the application of HHSC's linkage rule which is explained further below.

## II.    Statutory Background

Section 42.048 of the Texas Human Resources Code provides that, when issuing licenses to childcare facilities, HHSC may impose restrictions on the facility,

---

[1] Child Care Regulation Handbook, 11100, Overview of Heightened Monitoring
https://www.hhs.texas.gov/handbooks/child-care-regulation-handbook/11100-overview-heightened-monitoring
(last visited December 1, 2025).

including, but not limited to, the number of children to be served and the type of services they need. Tex. Hum. Res. Code Ann. § 42.048(b).

When DFPS removes a child from their home, it must then find a placement that best meets that child's needs. Tex. Fam. Code Ann. § 264.107. HHSC licenses and regulates various kinds of residential childcare facilities including those used as placements by DFPS to ensure they meet the minimum standards of care. 26 Tex. Admin. Code § 745.8401(a)(1); *see generally* 26 Tex. Admin. Code Chapters 748-749; *see also* Tex. Hum. Res. Code Ann. §42.042 (authorizing HHSC to adopt rules and minimum standards to carry out the provisions of Chapter 42);Tex. Hum. Res. Code Ann. §42.041 (requiring a license to operate a child-care facility or child-placing agency). DFPS investigates reports of abuse, neglect or exploitation at such facilities. 26 Tex. Admin. Code § 745.8401(b)(1); 19 Tex. Admin. Code Ch. 707. DFPS and the private SSCCs have other kinds of oversight of residential childcare providers – both under the terms of their contracts with the operations as well as the conservator of the children placed in the operations charged with monitoring the children in their placements to ensure their needs are being met.[2] One way this oversight can be increased is via "heightened monitoring", which is a multi-agency,

---

[2] Child Care Regulation Handbook, 11100, Overview of Heightened Monitoring
https://www.hhs.texas.gov/handbooks/child-care-regulation-handbook/11100-overview-heightened-monitoring
(last visited December 1, 2025).

multi-division program delivered by both HHSC and DFPS.[3] There are three primary features: (1) creating a heightened monitoring plan identifying tasks for the provider to follow to improve their performance; (2) heightened monitoring inspections/visits conducted by both HHSC and DFPS, and (3) Facility Intervention Team Staffing ("FITS") meetings to assess the provider's continued performance.[4]

Chapter 42 of the Texas Human Resources Code was enacted to protect the health, safety and well-being of children residing in childcare facilities. *See* Tex. Hum. Res. Code Ann. § 42.001. Chapter 42 of the Texas Human Resources Code defines a facility's "controlling person" as "a person who, either alone or in connection with others, has the ability to directly or indirectly influence or direct the management, expenditures, or policies of a facility or family home. *See Id.* at § 42.002(18). Recognizing that a "controlling person" makes the same types of operation decisions at the various facilities they oversee, the term is more specifically defined at Rule § 745.901 in HHSC's regulations (See 26 Tex. Admin. Code § 745.901):

> (a) A controlling person of a child-care operation is any:
>
> > (1) Owner of the operation or member of the governing body of the operation, including, as applicable, an executive, an officer, a board member, a partner, a sole proprietor and the sole

---

[3] *Id.*
[4] *Id.*

7

proprietor's spouse, or the primary caregiver at a child-care home and the primary caregiver's spouse;

(2) Manages, administrates, or directs the operation or its governing body, including a child care director or a licensed administrator; or

(3) Either alone or in connection with others has the ability to influence or direct the management, expenditures, or policies of the operation. For example, a person may have influence over the operation because of a personal, familial, or other relationship with the governing body, manager, or other controlling person of the operation.

(b) A person does not have to be present at the operation or home or hold an official title at the operation or governing body in order to be a controlling person.

26 Texas Administrative Code § 745.497 is written in question-and-answer format and intended to provide guidance on the question "May Licensing issue a new license to a residential child-care operation that was previously on heightened monitoring?". 26 Tex. Admin. Code § 745.497. Subsection (c)(1) of this rule provides that, when HHSC is issuing an initial license to a residential child-care operation that had a change in ownership while on heightened monitoring or otherwise met the criteria for heightened monitoring in the five years before the change in ownership, licensing must include a condition on the license that the operation is subject to heightened monitoring if a controlling person from the previous operation serves or intends to serve as a controlling person in the new

8

operation. *Id.* § 745.497(c)(1). This rule is commonly referred to as the heightened monitoring "linkage rule." *Id.* The linkage rule is intended to protect child safety by clarifying that HHSC cannot and will not allow licensees to avoid the imposition of heightened monitoring by shifting the business of their childcare operations subject to heightened monitoring to other licenses controlled by the same individuals. *Id.*

### III.    Procedural History

On June 20, 2025, Kenneth Collier, Taneshu, Collier TRELS Home, LLC, and TRELS Home for Children (collectively, "Appellees") filed the underlying lawsuit seeking declaratory and injunctive relief to prevent Appellants from exercising heightened monitoring procedures against the Appellees and allege that the application of 26 Texas Administrative Code §745.497(c)(1) to Appellees "interferes with its legal rights to run the LLC and RTC." CR 3-16.

On September 4, 2025, Appellants filed its *Plea to the Jurisdiction and Motion to Stay Discovery*. CR 22-39.

On October 14, 2025,[5] the Honorable Judge Donnie Burgess, a visiting judge in the 345th District Court of Travis County, Texas, heard Appellants' Plea to the Jurisdiction  as well as Appellees' Application for Temporary Injunction. *See generally,* RR2. At the hearing, the Honorable Judge Donnie Burgess ruled that he

---

[5] In their Motion for Temporary Order, Appellees incorrectly identify October 15, 2025, as the date of the hearing. The correct date of the hearing is October 14, 2025, which is accurately reflected in in the Reporter's Record. RR2.

was denying Appellants' Plea to the Jurisdiction and granting Appellees' Temporary Injunction. *Id*. at 22:9-10, 91:7-20.

On November 3, 2025, twenty days after the Honorable Judge Donnie Burgess ruled from the bench, Appellants filed their Notice of Accelerated Interlocutory Appeal, appealing the trial court's oral interlocutory orders. CR 65-70. The appeal superseded Appellees' injunction and stayed the trial court proceedings. *Id*.

On November 4, 2025, the Honorable Judge Donnie Burgess signed two orders: (1) an Order Denying Appellants' Plea to the Jurisdiction, and (2) an Order Granting Appellees' Application for Temporary Injunction. *See* CR 74; Mot.App. at Ex. B.

On November 17, 2025, Appellees filed their Motion for Temporary Order Under TRAP 29.3.

## STANDARD OF REVIEW

Texas Rule of Appellate Procedure 29.3 authorizes a court of appeals to "preserve the parties' rights until disposition of the appeal." Tex. R. App. P. 29.3. "A stay pending appeal is, of course, a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *In re State*, 711 S.W.3d at 645. "To begin with, an appellate court can hardly endeavor to preserve the parties' rights pending appeal without making a preliminary inquiry into what those rights are." *Id*. Consequently, "the

10

likely merits of the parties' respective legal positions are always an important consideration when a court is asked to issue an order determining the parties' legal rights pending appeal." *Id*. "Another essential consideration . . . is the injury that will befall either party depending on the court's decision." *Id*. Thus, "[t]he equitable balancing of these harms is a required aspect of a court's effort to preserve the parties' rights pending appeal." *Id*.

## ARGUMENTS

### I.      Appellees are Unlikely to Succeed on the Merits.

The Court should deny Appellees' motion because they are unlikely to succeed on the merits of their claim, and "[t]here is little justice in allowing a party who will very likely lose on the merits to interfere with the legal rights of the opposing party during the appeal." *In re State*, 711 S.W.3d at 645 . Appellees' claims are statutory interpretation issues which concern whether the designation of a condition of heightened monitoring on the Callahan and Hondo operations was properly applied to Appellees' licenses for those two locations under the linkage rule. CR 3-16. Texas' Administrative Procedure Act (APA) allows a party to challenge the validity or applicability of a rule in a declaratory judgment action if it is alleged that the rule interferes with or impairs a "legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a). On appeal, the facts and evidence will show there has not

been a waiver of sovereign immunity which would allow Appellees to seek declaratory relief.

A heightened monitoring plan is implemented in order to protect the health, safety and well-being of children in care due to a documented pattern of deficiencies relating to minimum standard violations weighted medium or higher, confirmed abuse or neglect findings, or Texas Department of Family and Protective Services (DFPS) contract violations. *See* 26 Tex. Admin. Code §745.491.

On March 10, 2025, the Lewis Street operation was placed on heightened monitoring. RR2 55:6-9. The reasoning for the designation was based on compliance violations of minimum standards for operations and for findings of child abuse and neglect. RR2 69:11-70:3. Subsequently, under HHSC's linkage rule, the Callahan and Hondo operations were also placed on heightened monitoring due to sharing the same controlling person, Appellee Taneshu Collier. RR2 70:4-71:5.

Appellees admit that their original location, the Lewis Street location, is rightfully on heightened monitoring. *See* RR2 58:6-13; Mot.App. at 5 (stating "a third residential treatment center (not subject of this lawsuit) that is rightfully on heightened monitoring). Additionally, Appellees admit that Taneshu Collier, who was a controlling person at the time the Lewis Street operation was placed on heightened monitoring, is currently a controlling person at the Callahan and Hondo

12

operations and acts as Chief Executive Officer ("CEO") of those two operations. RR2 33:13-34:2.

Texas law requires that HHSC pay attention to operations with "controlling persons in common" because these individuals have great influence, direction, or management of childcare operations. *See* Texas Hum. Res. Code Ann §42.002(18); *see also* 26 Tex. Admin. Code §745.901. The procedure to link residential operations is set forth in Section 3323.4 of HHSC's Child Care Regulation Handbook.[6] On appeal, the arguments and evidence will show the application of 42.048 of the Texas Human Resources Code and 26 Texas Administrative Code §745.497(c)(1) to the licenses of the Callahan and Hondo operations was proper because they are linked by the same controlling person, Taneshu Collier.

On appeal, Appellees will be unable to prove an affirmative waiver of sovereign immunity under Section 2001.038(a) of the APA which would allow them to prevail on the merits on their claims against HHSC and DFPS. To demonstrate standing under the APA, Appellees must show that their rights have been or probably will be impaired; the pleadings must allege, or the record must demonstrate facts showing how a particular rule has already interfered with plaintiff's rights or

---

[6] Child Care Regulation Handbook, 3323.4, Additional Requirements if the Applicant or an Associated Operation Has a History of Heightened Monitoring (RCCR Only), https://www.hhs.texas.gov/handbooks/child-care-regulation-handbook/3300-process-determining-whether-issue-or-deny-a-permit#3323-4-additional-requirements-if-the-applicant-or-an-associated-operation-has-a-history-of-heightened-monitoring-rccr-only (last visited December 1, 2025).

how that rule in reasonable probability will interfere with plaintiff's rights in the future. *Muth v. Voe,* 691 S.W.3d 93, 112 (Tex. App.—Austin 2024, pet. filed). A heightened monitoring plan is implemented in order to protect the health, safety and well-being of children in care due to a documented pattern of deficiencies relating to minimum standard violations weighted medium or higher, confirmed abuse or neglect findings, or Texas Department of Family and Protective Services (DFPS) contract violations. *See* 26 Tex. Admin. Code §745.491. "Linkage," the process of applying heightened monitoring conditions to related operations that share a controlling person, is well within the HHSC's statutory authority and is also necessary and appropriate for child safety. On appeal, Appellees will not be able to demonstrate to this Court that they have a legal right or privilege to run the Callahan and Hondo operations without the designation of heightened monitoring when it's previously been found necessary to protect the well-being of the children residing at the Lewis Street operation. Therefore, Appellees will not be able to succeed on the merits of their claims against HHSC and DFPS.

Additionally, Appellees are unlikely to succeed on the merits of their claims against Appellants Young and Castillo on appeal. Appellees assert that Appellants Young and Castillo acted ultra vires when applying section 42.048 of the Texas Human Resources Code and 26 Texas Administrative Code §745.497(c)(1) to the

14

licenses of the Callaghan and Hondo operations. CR 3-16. "To fall within the ultra vires exception, a suit . . . must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). The legislature specifically granted HHSC broad authority to impose restrictions on facilities when issuing a license. *See* Tex. Hum. Res. Code Ann. § 42.048(b). Therefore, the *ultra vires* exception to sovereign immunity does not apply to the individual Appellants, and Appellees are unlikely to succeed on these claims on appeal.

## II. The Balance of Equities Favors Appellants.

"A stay pending appeal is, of course, a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *In re State*, 711 S.W.3d at 645. The "'principles, practice and procedure governing courts of equity shall govern proceedings in injunctions.'" *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979) (quoting Tex. R. Civ. P. 693). In addition to the Appellants' likelihood of success on the merits, the "equitable balancing of th[e] harms" favors the Appellants and, therefore, the denial of Rule 29.3 relief. *In re State*, 711 S.W.3d at 645.

Here, if a temporary stay of heightened monitoring is put in place during pendency of this appeal, the potential for immediate, irreparable harm is higher to

not only the Appellants but also the children in DFPS's care who have been placed in the Callahan and Hondo facilities than any potential harm to the two operations. Specifically, if heightened monitoring procedures are stayed at the Callaghan and Hondo operations during the pendency of this appeal, there is a risk that the same or similar standards violations and abuse and neglect violations that occurred at the Lewis Street operation could go unnoticed and uncorrected during the pendency of this appeal in the absence of heightened monitoring.

By contrast, the potential for immediate, irreparable harm to Appellees' two business operations by remaining under the heightened monitoring designation during the pendency of this appeal is very low, and consequently, Appellees' arguments that a temporary injunction is needed during the pendency of this appeal fails. While Appellees claim that Appellants resumed heightened monitoring activities (including weekly inspections) once the appeal was filed in retaliation or due to some other malicious intent; this is untrue. Appellee Taneshu Collier admitted that the normal procedure for the Callahan and Hondo locations after being placed on heightened monitoring was for the Appellants to visit each location once a week. RR2 44:19-24. Once the trial court's injunction was lifted, the Appellants had to quickly return to the weekly inspections in order to abide by the heightened monitoring plan for each facility. Therefore, it is reasonable and should have been

expected by Appellees that these visits would resume in the absence of a temporary injunction enjoining Appellants from conducting their weekly visits as required under the facilities' heightened monitoring plans.

Next, Appellees cannot show that the Callahan and Hondo operations would suffer immediate, irreparable harm without a stay of heightened monitoring with regard to children being placed at those facilities. Appellees allege in their motion that Appellants are "interrupting placements of children". *See* Mot.App. at 8. However, in the Declaration of Appellee Kenneth Collier, he admits he doesn't know why two children didn't come into Appellees' care stating: "I cannot state with any certainty that these placements failing to materialize is another form of retaliation." *See* Mot.App. at Ex. B. In fact, Appellees did not present any facts or evidence to support their allegations that children in DFPS's custody have not been placed at their business operations due to anything other than legitimate reasons. Therefore, Appellees have not demonstrated to this Court that the Callahan and Hondo operations would suffer immediate, irreparable harm without a stay of heightened monitoring with regard to child placement.

Finally, Appellees' claim that a temporary injunction is necessary during the pendency of the appeal because Appellants' heightened monitoring procedure is "harassing" and hinders their care to the children who reside in the operations also

17

fails. As demonstrated above, heightened monitoring of the Callahan and Hondo operations has been put in place not to disrupt Appellees' businesses but rather to protect children who reside at those operations from suffering the same type of abuse and neglect and failure to meet the minimum standards of care that was found to have occurred at the Lewis Street operation. Appellees cannot demonstrate that the "equitable balancing of th[e] harms" favors their desire to stay heighted monitoring at the Callaghan and Hondo operations during the pendency of the appeal. *In re State*, 711 S.W.3d at 645. Appellees have made bold accusations about the process of heightened monitoring telling this Court that the heightening monitoring inspections at the Callahan and Hondo operations constitute "harassment", "revenge on Appellees," and "punishment." *See generally* Mot.App. However, Appellees contradict these claims that the monitoring is so harassing and so burdensome that they struggle with running their Callahan and Hondo operations because they make no complaint as to the exact same monitoring taking place at the Lewis Street operation. RR2 Page 58:6-13; Mot.App. at 5 (characterizing that operation as "a third residential treatment center (not subject of this lawsuit) that is rightfully on heightened monitoring"). In other words, so long as Appellees believe the designation of heightened monitoring is appropriate, like they have admitted it is for Lewis Street, Appellees do not believe the heightened monitoring procedure is a

disruptive or harassing procedure that requires Court intervention. *Id.* Appellees'

ultimate complaint in this lawsuit is the timing of the designation of heightened

monitoring on the licences of the Callahan and Hondo operations rather than a

complaint of the heightened monitoring procedure which is currently implemented

at the three operations. Accordingly, the "equitable balancing of th[e] harms" of

Appellants protecting children from business entities with a history of abuse and

neglect violations and a repeated failure to meet the minimum standards of care

when they seek to operate new operations outweighs Appellees' complaints about

the inconvenience to their business operations. Therefore, the Appellees' request

for Rule 29.3 relief should be denied. *In re State*, 711 S.W.3d at 645.

For the foregoing reasons, the potential for immediate, irreparable harm is

higher to the Appellants and, more significantly, higher to the children in DFPS's

custody and care if Appellants are enjoined from conducting heightened monitoring

while this Court reviews the underlying merits of this case. Therefore, Appellees'

request that heightened monitoring be enjoined at their Callahan and Hondo

operations during the pendency of this appeal should be denied.

## III.    If this Court Grants Appellees' Motion, Any Relief Must Be Limited.

Even if this Court finds that Appellees are entitled to relief under Rule 29.3,

any relief granted to Appellees must be limited. Appellees request that this Court

19

"order that the temporary injunction granted to Appellees remain in effect during the pendency of this appeal". *See* Mot.App. at 10. If this Court holds that any relief is appropriate, it should strictly limit the scope of its relief, because "[t]he text of Rule 29.3 plainly limits the scope of the available relief to that which is necessary to preserve the parties' rights." *In re Abbott*, 645 S.W.3d 276, 282 (Tex. 2022). Rule 29.3 does not provide "general authority to reinstate temporary injunctions of any nature." *Id.* at 283. Rather, Rule 29.3 "provides only the limited authority to 'preserve the parties' rights.'" *Id.* (quoting Tex. R. App. P. 29.3).

Here, the written Temporary Injunction Order Appellees are seeking to reinstate during the pendency of this appeal does not match the ruling the trial court made from the bench at the October 14th hearing on Appellees' Application for Temporary Injunction. *Compare* Mot.App. at Ex. A, with RR2 91:7-20 (stating "I'm not ready to characterize the actions of the State as illegal" while ruling "the State is enjoined from continuing heightened monitoring on the Hondo and Callaghan facilities immediately."). Additionally, the Temporary Injunction Order provides for attorneys fees if the appealing party does not fully prevail. *See* Mot.App. at Ex. A, (ordering "it is Ordered that if either party appeals this judgment to the Court of Appeals and does not fully prevail it shall pay $10,000 to the nonappealing party."). However, at the October 14th hearing, Appellees made no arguments for attorneys'

fees nor was any evidence introduced to support the amount of attorneys' fees that were included in the written Temporary Injunction Order. *See generally* RR2. Consequently, even if this Court finds that Appellees are entitled to relief under Rule 29.3, that relief must be limited to only that which this Court finds necessary to preserve Appellees' rights during the pendency of the appeal.

Finally, to the extent Appellees are seeking to obtain discovery during the pendency of the appeal, that request should be denied. On September 4, 2025, Appellants filed their *Plea to the Jurisdiction and Motion to Stay Discovery*. CR 22-39. In addition to asserting their sovereign immunity claims, Appellants also requested that the trial court stay discovery until the trial court had an opportunity to rule on their jurisdictional challenges. *Id* at 34-36. Prior to the hearing on Appellants' motion, the Parties entered into an agreed scheduling order containing a discovery deadline. Consequently, at the October 14th hearing, Appellants' counsel informed the Court that Appellants were only going to be arguing the plea to the jurisdiction portion of their motion and did not need the trial court to hear the motion to stay discovery. RR2 7:3-10. Accordingly, to the extent Appellees claim Appellants choosing not to be heard on their request for a stay of discovery pending the resolution of Appellants' plea to the jurisdiction constituted a waiver of the stay of the trial court proceedings during the pendency of this appeal, that argument fails.

21

Further, to the extent Appellees are seeking to obtain discovery from Appellants during the pendency of the appeal, that request should be denied due to the stay of all trial court proceedings. *See* TEX. CIV. PRAC. & REM. Code § 51.014(b).

## PRAYER

For the foregoing reasons, Appellants respectfully request that this Court deny Appellees' Motion for Temporary Order Under TRAP 29.3.

Respectfully submitted,

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

**BRENT WEBSTER**
FIRST ASSISTANT ATTORNEY GENERAL

**RALPH MOLINA**
DEPUTY FIRST ASSISTANT ATTORNEY GENERAL

**AUSTIN KINGHORN**
DEPUTY ATTORNEY GENERAL FOR CIVIL LITIGATION

**KIMBERLY GDULA**
CHIEF - GENERAL LITIGATION DIVISION

*/s/ Kelsey Hanson*
**Kelsey Hanson**
Texas Bar No. 24096654
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station

22

Austin, Texas 78711-2548
(737) 224-1244| FAX: (512) 320-0667
kelsey.hanson@oag.texas.gov

***Counsel for Appellants***

23

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed electronically and that notice of this filing will be sent to the following persons through File & Serve Texas's electronic filing system on **December 1, 2025**:

Kyle Ferguson
John Ferguson
Meghan Rudnai
Ferguson Law Practice, PLLC
1017 RR 620 S., Suite 222
Lakeway, TX 78734
Telephone: (512) 996-5407
*Attorneys For Appellees*

*/s/ Kelsey Hanson*
**Kelsey Hanson**
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelsey Hanson on behalf of Kelsey Hanson
Bar No. 24096654
kelsey.hanson@oag.texas.gov
Envelope ID: 108599244
Filing Code Description: Response
Filing Description: 20251201  Appellants Response to Appellees Motion for Temporary Order
Status as of 12/2/2025 10:03 AM CST

Associated Case Party: KENNETH  COLLIER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen De Alejandro | | karen@fergusonlawpractice.com | 12/2/2025 9:57:01 AM | SENT |
| Kyle Ferguson | | kyle@fergusonlawpractice.com | 12/2/2025 9:57:01 AM | SENT |
| John Ferguson | | john@fergusonlawpractice.com | 12/2/2025 9:57:01 AM | SENT |
| Meghan Rudnai | | meghan@fergusonlawpractice.com | 12/2/2025 9:57:01 AM | SENT |

Associated Case Party: TEXAS HEALTH AND HUMAN SERVICES COMMISSION

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chelsea Goodman | | chelsea.goodman@oag.texas.gov | 12/2/2025 9:57:01 AM | SENT |
| Kelsey Hanson | | kelsey.hanson@oag.texas.gov | 12/2/2025 9:57:01 AM | SENT |